UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL THOMPSON,

        Plaintiff,                    Case No. 1:15-CV-0829

v.                                         HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

Plaintiff, Daniel Thompson, appeals the Commissioner of the of the Social Security Administration's final decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The scope of judicial review in this case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard gives the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 31 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.38, 65.) He completed high school and has attended some college classes. (PageID.66.) Plaintiff was previously employed as a clerk/cashier and as an inventory clerk. (PageID.90.) Plaintiff applied for benefits on May 20, 2010, alleging that he had been disabled since December 22, 2006. (PageID.130, 141, 305–311.) In his application, Plaintiff claimed he could not work due to bipolar disorder, obsessive compulsive disorder, and ADHD. (PageID.130, 141.) Plaintiff's applications were denied on October 8, 2010. Plaintiff then requested a hearing before an ALJ. (PageID.189–199.) On June 11, 2011, Plaintiff amended his alleged onset date to December 1, 2008. (PageID.328.) After conducting an administrative hearing, ALJ Janet Gadigan

found, on April 27, 2012, that Plaintiff was not disabled. (PageID.154–174.) On November 18, 2013, however, the Appeals Council remanded the case for further factual findings. (PageID.175–180.) On February 10, 2014, Plaintiff appeared with his counsel before ALJ Luke Brennan for a second hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.61–93.) In a written decision dated February 26, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.38–60.) On June 12, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (PageID.27–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations have a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Brennan determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date. (PageID.43.) At step two, the ALJ determined that Plaintiff had the following severe impairments: (1) bipolar disorder; (2) polysubstance psycho-affective dependence; (3) marijuana abuse; (4) alcohol abuse; (5) schizoaffective and generalized anxiety disorder; and (6) narcissistic personality disorder. (PageID.43–44.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.45–46.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes; occasional interaction with supervisors, coworkers, and the general public.

(PageID.46.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.52–53.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following jobs as representative of work that Plaintiff could perform: packager (6,500 regional jobs[2] and

---

[2] At the hearing, the VE defined regional jobs as those jobs existing in the lower peninsula of the State of Michigan. (PageID.89.)

460,000 national jobs), office helper (11,000 regional jobs and 330,000 national jobs), and cleaner (6,000 regional jobs and 250,000 national jobs). (PageID.91–92.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.53–54.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his amended alleged onset date through the date of the decision. (PageID.54.)

## DISCUSSION

### 1. The ALJ Properly Evaluated Dr. LaFleur's Opinion.

On April 9, 2012, Dr. Robert LaFleur co-signed a completed worksheet that assessed Plaintiff's mental limitations. The completed worksheet assessed Plaintiff with mild to extreme limitations in the area of making occupational adjustments, no limitations to moderate limitations in the area of making performance adjustments, and mild to marked limitations in the area of making personal or social adjustments. (PageID.687–88.) Dr. LaFleur further opined that Plaintiff had mild limitations in activities of daily living, and marked limitations in maintaining social functioning and concentration, persistence or pace. (PageID.688.) He also found that Plaintiff had experienced one or two episodes of decompensation. (PageID.688.) Dr. LaFleur concluded by stating:

> The patient's depression and anxiety are his primary work-related limitations. He has difficulty leaving his home and appearing in public, he has difficulty interacting with others, and becomes easily stressed which interferes with his ability to stay on task. His current level of coping exists without the additional stress of work. Were he to attempt a return to full-time work, his stress level would increase and his symptoms would increase. We would expect that he would miss work on average at least once per week if he were to attempt a return to work. He would be at risk of inpatient psychiatric hospitalization with the added stress of work due to decompensation. Also of concern are his reports of visual and auditory hallucinations. These are not constant. But when they occur they tend to last for several days at a time. These interfere with his perception of reality and would make it difficult for him to perform adequately in the competitive work place. Daniel also struggles with bipolar mood

5

>swings and suicidal ideations. In part, because of his anxiety he has exaggerated responses to work stress. This interferes with his ability to concentrate and stay on task. If he were to attempt a return to full-time work he would be off task on average 15-20 percent of the workday.

(PageID.690.) Plaintiff claims the ALJ failed to give controlling weight, under the treating physician doctrine, to the doctor's opinion. (PageID.953–958.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). This requirement "ensures that

6

the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

As an initial matter, the parties dispute whether Dr LaFleur qualifies as a treating source. (PageID.954, 986, 1001–1002.) The record shows that Plaintiff met with Dr. LaFleur for medication reviews on three occasions between November 14, 2011, and February 13, 2012. (PageID.695–697, 702–707.) "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). "A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Id.* (quoting 20 C.F.R. § 404.1502.) In this case, the Court need not decide the point because even if Dr. LaFleur qualifies as a treating source, the ALJ provided "good reasons" for discounting his opinion.[3]

---

[3] Plaintiff claims the ALJ violated SSR 96–2p in failing to specify the examining relationship between Plaintiff and Dr. LaFleur. (PageID.954.) SSR 96–2p provides four criteria that must be present in order for a physician's opinion to be entitled to controlling weight. First among them, the physician must qualify as a treating source. SSR. 96–2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). While it may be preferable for an ALJ to explain whether a physician qualifies as a treating source, SSR 96-2p contains no provision requiring an ALJ to do so. Indeed, there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002). The ALJ did not err, therefore, in failing to specifically identify Dr. LaFleur's treating status. Plaintiff claims that because the ALJ did not specify the examining relationship, the Court must accept his assertion that the doctor qualifies as a treating source. (PageID.1002.) Plaintiff provides no authority for this argument, and Sixth Circuit authority points the other way. *See Smith*, 482 F.3d at 876 ("Before determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a "treating source."). Here, however, the Court finds that even if Plaintiff is correct that Dr. LaFleur qualifies as a treating source, Plaintiff's claim still fails.

Here, the ALJ articulated specific reasons, which are supported by the record, for discounting the doctor's opinion. The record shows that Plaintiff abuses substances, namely marijuana, on an almost daily basis. Though Plaintiff has a medical marijuana card, and has stated that the substance helps calm him down, Dr. LaFleur stated that Plaintiff should "avoid cannabis." (PageID.707.) Accordingly, "it was reasonable to expect Dr. [LaFleur] to comment upon how this behavior impacted Plaintiff's conditions. Because Dr. [LaFleur's] opinion was silent as to this factor, the ALJ assigned less weight to the doctor's opinion. It was appropriate for the ALJ to consider this factor." *Menough v. Comm'r of Soc. Sec.*, No. 4:11-CV-1224, 2012 WL 3815625, at *5 (N.D. Ohio Sept. 4, 2012) (McHargh, M.J.) (citing *Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 888–89 (6th Cir. 2011)). Moreover, in support of his opinion, Dr. LaFleur referred only to progress notes and medication reviews from Touchstone/Heart of the City records. (PageID.687.) The ALJ correctly noted that these records, which span dozens of pages, largely summarize Plaintiff's subjective statements. (*See, e.g.,* PageID.594, 596.) It is true that some records demonstrate the doctor's observations of Plaintiff as having an anxious mood and constricted affect. (PageID.704.) But the same records found Plaintiff was oriented to person, place, time, and situation, and had an unremarkable behavior, cooperative attitude, logical thought processes, and no paranoia, overt hallucinations, or mania. (PageID.704.) Aside from these short medication review notes, the vast majority of the treatment notes referenced by the doctor only summarize Plaintiff's statements. Considering that Plaintiff had, in the past, embellished his impairments and statements from his physicians in order to obtain benefits, the ALJ appropriately questioned the credibility of such statements. (PageID.530.) Finally, the record shows that, though difficult, Plaintiff was able to attend parent/teacher conferences. Though he claimed he was not learning anything, Plaintiff testified that his schooling at Grand Rapids Community College was "socially

stimulating." (PageID.82, 86.)  Plaintiff was also able to use the techniques learned at therapy to control his anxiety and drive to Chicago to pick up a friend. (PageID.721.)  All this, the ALJ correctly noted, is inconsistent with the extreme limitations provided by Dr. LaFleur.  Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. LaFleur's opinion.

Plaintiff relatedly notes that even if the ALJ provided good reasons, the ALJ was required to determine what weight to afford the opinion.  Here, Plaintiff claims the ALJ failed to weigh the opinion using the factors articulated in 20 C.F.R. §§ 404.1527(c) and 416.927(c). (PageID.957.)  Plaintiff is correct that even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected.  Rather the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors.  *See* SSR 96–2p, 1996 WL 374188 at *4; *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Here, the record demonstrates that the ALJ recognized his responsibility under the regulations, noting that he had to consider the opinion evidence in accordance with, among other things, 20 C.F.R. §§ 404.1527, 416.927(c), and SSR 96–2p. (PageID.47.)  The Court finds the ALJ adequately considered the factors regarding the opinion evidence, and specifically considered the doctor's opinions against the record. (PageID.51.)  The ALJ found that the proffered restrictions listed in the doctor's opinion were not well supported by the record, and in doing so the ALJ expressly considered several of the factors, including the consistency and supportability of the

9

opinion. (PageID.42–43.)  While the ALJ could have provided a more detailed analysis, what ultimately matters is whether the ALJ's reasons for discounting a treating source's opinion are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188, at *5 ).

### 2. The ALJ Properly Determined Plaintiff Did not Satisfy a Listing.

As noted above, Dr. LaFleur's opinion found that Plaintiff had mild limitations in activities of daily living, marked limitations in maintaining social functioning, and marked limitations in maintaining concentration, persistence, or pace.  Plaintiff had also experienced one or two episodes of decompensation. (PageID.688.)  Plaintiff claims the ALJ erred in failing to discuss this portion of Dr. LaFleur's opinion at step three of the sequential analysis. (PageID.958–61.)

The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1525.  The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* At issue in this case are Listings 12.04 (affective disorders),12.06 (anxiety related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorder).

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*,

820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984); *see, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x. 725, 728 (6th Cir. 2004) (stating that "[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.* In two of the listings cited by the ALJ (12.04 and 12.06) the listings also contain paragraph C criteria, which are additional functional criteria. *Id.* "The requirements in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* Listings 12.04 and 12.06 are met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff contests the ALJ's paragraph B finding, claiming that it is unsupported by substantial evidence because the ALJ did not discuss Dr. LaFleur's opinion. (PageID.960.)

11

The paragraph B severity requirements of Listings 12.04 and 12.06 require at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[4] A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see also Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x. 988, 993 (6th Cir. 2007).

The ALJ found that Plaintiff did not meet the paragraph B criteria because he had only mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. Plaintiff also had experienced only one to two episodes of decompensation, each of extended duration. (PageID.45–46.) At bottom, the ALJ determined that plaintiff met none of the paragraph B requirements. Plaintiff's brief does not show how the ALJ failed in the above analysis, but rather merely argues the ALJ failed to consider Dr. LaFleur's opinion. But Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. He must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). This he does not do, and indeed substantial evidence supports the ALJ's conclusion. That the ALJ did not discuss Dr. LaFleur's opinion a second time

---

[4]"Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). As the ALJ explained, repeated episodes of decompensation, each of extended duration "means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." (PageID.46.)

does not change this fact. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x. 359, 365–66 (6th Cir. 2014).

Plaintiff's reliance on non-binding case law also does not release him from his burden. Plaintiff cites *Anthony v. Commissioner of Social Security*, No. 13-CV-13792, 2014 WL 6455637, at *7 (E.D. Mich. Nov. 17, 2014), for the proposition that "if the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id.* (internal citations omitted). This case does not help Plaintiff for a number of reasons. As an initial matter, in *Anthony*, the plaintiff specifically argued he met a listing, but the ALJ "omitted all discussion" regarding that listing. *Id.* On the other hand, Plaintiff has never argued—either at the hearings or in a pre-hearing brief—that he meets a listing. Plaintiff does not even argue to this Court that he actually meets a listing. Moreover, the ALJ's discussion of paragraph B was not "perfunctory." The ALJ's discussion spans two pages and provides detailed analysis, citing record evidence, why Plaintiff does not satisfy paragraph B. The ALJ's analysis was supported by substantial evidence. Accordingly, Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: August 29, 2016                          /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE

13